

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00196-CR

DEVIN JEIMOND MITCHELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 15-0172X

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After being convicted by a Harrison County jury of two counts of aggravated assault with a deadly weapon[1] and being imposed a penalty of two concurrent fifteen-year sentences, Devin Jeimond Mitchell has appealed. In his appeal, Mitchell maintains that the trial court erred in failing to sustain his *Batson*[2] objections to the peremptory challenges of the State to two prospective jurors, in having allowed a witness to voice an opinion as to the guilt/innocence of the accused, and in permitting evidence of prior offenses committed by unknown persons against the family of one of the victims of Mitchell's crime. We affirm the judgment in this case.

## I. The Assault and Robbery

Marisa Salgado and her friend, Valeria Longoria, sat in Salgado's car as they waited outside the Longoria home for Valeria's sister, Chantal, late on the night of March 18, 2015. Two young African-American men in dark clothes, whom the girls had previously seen milling about in the area of a nearby stop sign, approached the girls in the car. The young men neared the car and, through the rolled-up window, first asked to borrow a cell phone from the girls, and then one of them asked to see Salgado's purse. At one point, one of the men knocked on the car window with a pistol. The girls initially tried to ignore the men, but Salgado finally rolled down her window and showed one of the men her purse, telling him that there was "really nothing in there that [he could] take." The man responded, "Give me your purse," and Salgado complied. At that point, Chantal exited the house, and the two men fled, firing shots as they ran.

---

[1]*See* TEX. PENAL CODE ANN. § 22.02 (West 2011).

[2]*See Batson v. Kentucky*, 476 U.S. 79 (1986); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006).

## II. *Batson* Challenge

Mitchell is an African-American man. After voir dire of the panel had been completed and the parties exercised its peremptory strikes, Mitchell complained to the trial court that the State had impermissibly used their peremptory strikes by employing those strikes to exclude two African-American women solely because of their race. Although Texas law allows parties to make peremptory strikes of venirepersons following voir dire,[3] such strikes cannot be used to violate a party's Equal Protection Clause rights by striking venirepersons because of their race. *See Batson*, 476 U.S. at 89; *see also* U.S. CONST. amend. XVI, § 1. The dictates of the United States Supreme Court in *Batson* have been codified in Texas. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261; *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012). Mitchell's first point of error complains of the trial court's denial of Mitchell's *Batson* claims, and his second point of error argues that the trial court violated Article 35.261. Because the analyses of these two alleged errors are effectively the same, we will address them together.[4]

Where a party challenges his opponent's peremptory strikes on *Batson* grounds, the first step in a successful challenge is to "make a prima facie showing that a peremptory challenge has been exercised on the basis of race." *Miller-el v. Cockrell*, 537 U.S. 322, 328 (2003). The burden then shifts to the peremptory striker to posit a race-neutral reason for its strike. *Id*. After the peremptory striker has voiced what is represented to be a race-neutral reason for the strike, the trial

---

[3]*See* TEX. CODE CRIM. PROC. ANN. art. 35.15(b) (West 2006).

[4]Although Mitchell's trial counsel did not voice an objection based on Article 35.261, the Texas Court of Criminal Appeals has indicated that "whenever a claim is made that veniremembers were peremptorily challenged on the basis of their race, article 35.261 must be followed." *Hill v. State*, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992).

court then determines whether the *Batson* challenger has made an initial showing of "purposeful discrimination." *Id*. at 328–29; *see also Nieto*, 365 S.W.3d at 676 (citing *Batson*, 476 U.S. at 96–98). The second-stage, neutral explanation need not be "a reason that makes sense," but simply "a reason that does not deny equal protection"; however, although a race-neutral explanation that is "silly or superstitious" satisfies the second stage of *Batson*, a trial court "*may choose to disbelieve* a silly or superstitious reason" at the third stage. *Purkett v. Elem*, 514 U.S. 765, 768–69 (1995).[5] Once the State has articulated "race neutral reasons for its strikes, the burden shifts to the defendant to rebut those explanations." *Young v. State*, 826 S.W.2d 141, 143 (Tex. Crim. App. 1991).

"A reviewing court should not overturn the trial court's resolution of the *Batson* issue unless it determines that the trial court's ruling was clearly erroneous." *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013). The reviewing court looks to the "entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record." *Id*. The trial court's ruling on a *Batson* challenge receives "great deference" in our review. *Id*. Determining whether the State's race-neutral reasoning for the strike was pretextual and not genuine must be "manifestly grounded in the appellate record." *Id*. "The term 'pretext' is solely a question of fact; there is no issue of law. Therefore, the trial court was in the

---

[5]Additionally, while *Batson*'s equal protection rule was implemented for the protection of defendants, it also protects the rights of the citizenry at large to participate in the jury system. African-Americans may not be denied "the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Batson*, 476 U.S. at 91 (quoting *Swain v. Alabama*, 380 U.S. 202, 224 (1965)).

best position to make that credibility determination." *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004).[6]

Mitchell raised a *Batson* challenge to the State's peremptory strikes of Venireperson A and Venireperson B. The parties acknowledge that Mitchell, Venireperson A, and Venireperson B are all African-Americans.

In voir dire, Venireperson A said she could not return a verdict of guilty if the State produced neither DNA evidence nor the weapon used and, further, that she could not convict on the testimony of only one witness. When Mitchell made his *Batson* challenge, the State's explanation for the strike of Venireperson A was that "[o]n her right or left hand, her fingernails are 7 inches long, which is indicative of drug use, especially cocaine, when fingernails are that long. We don't believe she would be a good juror based on physical appearance as a reason and because her fingernails are so long." Mitchell rebutted the State's proffered race-neutral explanation by "point[ing] out that [Venireperson A] is a grandma, a matronly looking woman who I think her juror information card will indicate that she is over 60 years of age. Looking at her, to suggest that she is involved in drug use is absurd." The trial court denied Mitchell's challenge.

The State gave the race-neutral explanation that an element of Venireperson A's physical appearance made the State suspect that she could be a user of illegal drugs.[7] "In the typical

---

[6]Here, the Texas Court of Criminal Appeals found that the intermediate court "misapplied this 'clearly erroneous' standard of appellate review when it substituted its judgment for the trial court's in deciding that the prosecutor's facially race-neutral explanation for striking veniremember 11 was a pretext." *Gibson*, 144 S.W.3d at 534.

[7]In *Gambel v. State*, 835 S.W.2d 788, 790–91 (Tex. App.—Houston [14th Dist.] 1992, no pet.), the prosecutor struck a venireman who wore an earring, which the prosecutor associated with persons in the business of illegal drugs, based

5

peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez v. New York*, 500 U.S. 352, 365 (1991).[8] Mitchell's only rebuttal to the State's allegation that the fingernails of the venireperson led the State to believe that the person who had been struck might be a drug user was that the other physical appearances of the woman made him doubt that she was involved in the use of illegal drugs. We find this rebuttal insufficient to prove by a preponderance of the evidence that the State engaged in purposeful discrimination when striking Venireperson A. The trial court's ruling on Venireperson A's *Batson* challenge is affirmed.

As for Venireperson B, the State asserted that during voir dire examination, she failed to disclose a prior felony arrest. From the voir dire record, it seems the State was referring to an information card that Venireperson B provided. (Unfortunately, the information cards are not in the appellate record. However, it appears from statements during the discussion on the *Batson* challenge that such cards were available and reviewed by the parties and the trial court.) Mitchell did not contest the State's claim that Venireperson B had failed to disclose a felony arrest and

---

on the prosecutor's experience. In *Jack v. State*, 867 S.W.2d 942, 946 (Tex. App.—Beaumont 1993, no pet.), the venirewoman was struck because her comments led the State to believe the panelist "had a fear that there was selective enforcement of drug laws taking place." These were both held to be race-neutral explanations.

[8]The trial court may have also taken into account that Venireperson A also said in voir dire that she could not find a defendant guilty if the State produced only one witness. Mitchell's sole rebuttal for the State's reasoning was that based on the woman's appearance and age, it believed that she was unlikely to be a user of illicit drugs.

seemed to agree with it;[9] the trial court only commented that whatever document was being discussed did not ask about convictions, but only inquired about an "[a]rrest for felony."[10] Mitchell offered no rebuttal. We may not reverse the trial court's *Batson* ruling where the trial court's "account of the evidence is plausible in light of the record viewed in its entirety." *Whitsey v. State*, 796 S.W.2d 707, 722 (Tex. Crim. App. 1989) (op. on reh'g) (quoting *Anderson v. Bessemer*, 470 U.S. 564, 573–74 (1985)). Further, Venireperson B (much like Venireperson A) indicated during voir dire questioning that she "would have to have something other than that" if the State's case were only supported by the testimony of a victim which was supported by no scientific or physical evidence such as the gun used, fingerprints, or DNA.

Based on the totality of the voir dire concerning Venireperson B and Mitchell's failure to successfully rebut the State's reason, we cannot say that the trial court's ruling was clearly erroneous.

Because Mitchell failed to show the lack of a nonracial reason for the exercise of the peremptory strikes of which he complains, we need not examine this issue further.

Points of error one and two, regarding the trial court's ruling on Mitchell's *Batson* challenges, are overruled.

---

[9]Mitchell's only concern was this information "screws our entire panel up" and "if [Venireperson B] was not in that slot, I would have used my strikes in a different way."

[10]In *Young v. State*, 283 S.W.3d 854 (Tex. Crim. App. 2009) (per curiam), a venirewoman's "concealment of her daughter's larceny conviction" along with the venirewoman's "affiliation to a group that ministers to prisoners" was found to justify the State's peremptory strike. *Id.* at 870.

## III. State's Improper Question Was Harmless

We agree with Mitchell's third point of error, in that the State erroneously was allowed to ask a witness a question going to an ultimate issue which was for the jury to decide. However, due to the harmless character of the error, we overrule this point of error.

While questioning Detective Patrick Clayton about his investigation, the State asked if, based on the evidence and Clayton's experience in law enforcement, Clayton "believe[d] that Devin Mitchell committed this robbery?"

It is improper for a witness to express his opinion of the ultimate guilt/innocence of an accused. "[T]he expression of guilt or innocence . . . [i]s a conclusion to be reached by the jury based upon the instruction given them in the court's charge, coupled with the evidence admitted by the judge through the course of trial. Thus, no witness [i]s competent to voice an opinion as to guilt or innocence." *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974). This question by the State was improper, and it was error for the trial court to overrule Mitchell's objection to it.

Instead of arguing that the question and response were admissible, the State takes the position that the trial court's ruling constituted harmless error. We agree. Admission of improper opinion testimony is error of nonconstitutional dimension and will yield a reversal only if the erroneous admission affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Wilson v. State*, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.). Here, we are confident that Clayton's improper opinion testimony did not affect Mitchell's substantial rights.

"A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not

8

influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In Mitchell's case, there was substantial evidence pointing to his guilt. Salgado, one of the victims, knew both Mitchell and Isaiah Jackson from photographs in a high school yearbook and had seen them while she was in high school. She identified them as the perpetrators of the crime from these pre-existing sources. Bullets matching the caliber and manufacturer of a shell casing found at the scene were found in a bag hidden in a pillowcase in Mitchell's bedroom, a room he shared with no one else. Further, the unspent bullets in Mitchell's pillowcase shared a similar "irregular toolmark" with at least one of the spent shell casings found at the scene. Clayton testified that when he interviewed Mitchell, the suspect's story kept morphing. Mitchell first said that he had spent the night at home, then said that he had been walking around alone, then that he had been walking around with Jackson, and finally conceded that he and Jackson had been walking around together in the area of the robbery. Mitchell's almost unintelligible interview confirms this irregularity of stories recounted by Clayton. Mitchell's mother told Clayton that Mitchell and Jackson frequently hung out together.

Valeria corroborated Salgado's description of events wherein she related that two African-American men approached the women in their car, asked to "see" their telephones, and asked for Salgado's purse. While Valeria could not identify either man in the high school yearbook shown her at the police station, she did testify that she recognized one of the men from high school. In addition, Valeria recognized Jackson the day after the robbery when she saw photographs of him after he escaped from police custody. Valeria also testified that the men ran off when Chantal came out of the house, and they heard gunshots as the men ran away.

9

The error in allowing Clayton's testimony was a minor one. Clayton's improper testimony caused no harm to Mitchell's substantial rights. Therefore, Mitchell's point of error pertaining to this is overruled.

## IV. Harmless Error in Admission of Irrelevant Criminal Activity

While questioning Chantal, the State elicited testimony that at some time before the instant robbery, someone broke into Chantal's mother's car and that her father had chased that person away. Chantal further stated, "[T]here had been a lot of break-ins before that." The State clarified that Mitchell was not the person seen breaking into the car. The State's explanation for proffering this testimony was that it was only offered "for the Defense's benefit."

Evidence must first be relevant in order to be admissible. *See* TEX. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. We cannot conceive of the relevance that evidence of previous vehicle burglaries would bear to the accusation against Mitchell in this case. The State's appellate brief states, "The testimony is relevant as to whether or not the witness was certain to what she saw in this particular incident as opposed to other incidents." The State points out that Chantal clearly testified that Mitchell was not the suspect seen by her and her father on the earlier occasion, and she pointed out that there had been no subsequent break ins.

The State has presented no credible explanation as to the reason it believes that testimony regarding the car burglary had any relevance to the robbery for which Mitchell was on trial. Despite the fact that at trial, the State maintained to the trial court that the matter was "clearly

10

relevant in this case," it is virtually impossible to see that this evidence made any fact of consequence in the present trial more or less likely. We are not swayed by the State's attempt at justification in its brief, that the "testimony is relevant as to whether or not [Chantal] was certain to what she saw in this particular incident as opposed to other incidents." The previous car burglary and the instant robbery were clearly dissimilar. This testimony only showed that Chantal had witnessed two different and entirely unrelated crimes (with no suggestion in the record as to the time interval between the two) and that she could identify the perpetrators of neither. The earlier break-ins were utterly irrelevant to whether Mitchell was criminally responsible for the robbery of Salgado and Valeria.

However, as with the prior discussion, this nonconstitutional error was harmless, having not affected Mitchell's substantial rights. The evidence summarized above allows us fair assurance that the erroneous admission of Chantal's testimony had no or slight effect upon the ultimate conviction. This point of error is overruled.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     May 2, 2016
Date Decided:      July 8, 2016

Do Not Publish

11