

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00090-CR

LAWRENCE AUSTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 361st District Court
Brazos County, Texas
Trial Court No. 19-02164-CRF-361

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Brazos County jury convicted Lawrence Auston of assaulting a peace officer.[1]  During a bench trial on punishment, Auston pled true to the State's punishment-enhancement allegation, and the trial court sentenced him to forty-five years' imprisonment.  On appeal, Auston argues that the trial court erred by denying his *Batson*[2] challenge and by overruling his objection to the jury charge.

We find that the trial court's decision to overrule Auston's *Batson* challenge was not clearly erroneous.  We also find no error in the trial court's jury charge.  As a result, we affirm the trial court's judgment.

## I.	The Decision to Overrule Auston's *Batson* Challenge Was Not Clearly Erroneous

In his first point of error, Auston argues that the trial court erred when it denied his *Batson* challenge after the State used a peremptory strike against venireperson 25, an African-American panelist.

### A.	Relevant Caselaw

Use of peremptory challenges to strike potential jurors on the basis of race is prohibited by both the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 35.261 of the Texas Code of Criminal Procedure.  U.S. CONST. amend. XIV, § 1; *see Batson*, 476 U.S. at 85–86; TEX. CODE CRIM. PROC. ANN. art. 35.261.  If the

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).  We follow the precedent of the Tenth Court of Appeals in deciding this case.  *See* TEX. R. APP. P. 41.3.

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

defendant suspects the State of making race-based challenges, he may request a *Batson* hearing.

*See* TEX. CODE CRIM. PROC. ANN. art. 35.261(a).

Courts use a three-step process in determining *Batson* challenges. *Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009) (per curiam). Initially, the defendant must present a prima facie case that the State exercised its peremptory challenges on the basis of race. *Snyder*, 552 U.S. at 476; *Young*, 283 S.W.3d at 866. The State must then articulate a race-neutral explanation for its challenged strikes. *Snyder*, 552 U.S. at 476–77; *Young*, 283 S.W.3d at 866. A race-neutral explanation is one "based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). If no "discriminatory intent is inherent in the . . . explanation, the reason . . . [is] deemed race neutral." *Id.* The defendant may rebut the State's explanation, but the "burden of proving purposeful discrimination" remains with the defendant. *Young*, 283 S.W.3d at 866. In the final step, "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359; *Young*, 283 S.W.3d at 866; *see Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam).

### B. Standard of Review

In reviewing a *Batson* ruling, we consider the record "in the light most favorable to the trial court's ruling." *Young*, 283 S.W.3d at 866. The trial court's decision will not be disturbed "unless it is clearly erroneous." *Id.*; *see Hernandez*, 500 U.S. at 369. To determine whether the trial court's decision was clearly erroneous, we examine the record to see whether we are left with a "definite and firm conviction that a mistake has been committed." *Guzman v. State*, 85

S.W.3d 242, 254 (Tex. Crim. App. 2002) (quoting *United States v. Fernandez*, 887 F.2d 564, 567 (5th Cir. 1989) (per curiam)). The trial court is in the best position to determine whether the State's race-neutral explanation is genuine, so we defer to its ruling barring exceptional circumstances. *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012). The trial court "must focus on the genuineness of the asserted non-racial motive, rather than the reasonableness." *Jackson v. State*, 442 S.W.3d 771, 774 (Tex. App.—Texarkana 2014, no pet.) (quoting *Nieto*, 365 S.W.3d at 676).

We do not substitute our judgment for the trial court's when considering whether the State's explanation was a pretext. *Id.* Like the trial court, we consider the genuineness, not the reasonableness, of the proffered non-racial explanation. *Nieto*, 365 S.W.3d at 676 (citing *Gibson v. State*, 144 S.W.3d 530, 533–34 (Tex. Crim. App. 2004)). "Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance." *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008).

### C.      The *Batson* Hearing

After the State used a peremptory strike on venireperson 25, Auston argued, "I don't think that there's any other reason the State can strike him but for his race." In response, the State explained that it "struck everyone under age 25, anyone who is anywhere near that age group" and claimed that venireperson 25 was struck because he was born in 2000. The State explained that it had also struck another panelist because of age.

4

In an effort to establish that the State's race-neutral explanation for striking venireperson 25 was pretextual, Auston noted that the State had also struck two more African Americans in the strike zone. Even so, the State explained that it struck one of the African-American panelists because she was previously indicted for murder, and the other African-American panelist because he was charged with driving without a valid license, which was "especially concerning to the State because that was what the arrest was for in this case which led to the assault of a peace officer." After hearing the State's explanations, the trial court denied the *Batson* challenge.

### D.     Analysis

As explained above, "a reviewing court should examine a trial court's conclusion that a racially neutral explanation is genuine, not a pretext, with great deference, reversing only when that conclusion is, in view of the record as a whole, clearly erroneous." *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013). Factors to consider may include: "(1) statistical evidence, (2) evidence of disparate questioning of similarly-situated venirepersons, (3) side-by-side comparisons of the stricken venirepersons and the accepted venirepersons, (4) whether the record supports the State's explanations for its strikes, and (5) any other relevant circumstances bearing on the issue of purposeful discrimination." *Compton v. State*, 666 S.W.3d 685, 698 (Tex. Crim. App. 2023) (citing *Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019)).

Here, the State struck all three African Americans in the strike zone, but it explained that two of them were struck because of being charged with criminal offenses. There was no indication of disparate questioning in the record, and as to venireperson 25, the State explained

5

that it struck him because he was under twenty-five. "Age is an accepted criterion for peremptory challenges and does not violate *Batson*." *Brown v. State*, 960 S.W.2d 265, 269 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) (citing *Silva v. State*, 800 S.W.2d 912, 914–15 (Tex. App.—San Antonio 1990, no pet.); *Moss v. State*, 790 S.W.2d 731, 732 (Tex. App.—Houston [14th Dist.] 1990, no pet.)). As a result, the Waco Court of Appeals has determined that "striking every person on the venire panel that was under the age of twenty-five" constitutes a proper race-neutral explanation. *Torres v. State*, No. 10-12-00263-CR, 2014 WL 2720800, at *3 (Tex. App.—Waco June 12, 2014, no pet.) (mem. op., not designated for publication).

Although Auston attempts a side-by-side comparison of stricken and accepted venirepersons, the record shows that venireperson 25 was the youngest person on the panel and was born in 2000. Auston compares the age of venireperson 25 to other panel members, but the next youngest person was born in 1993 and was well over twenty-five. As a result, the record supports the State's explanation for its strike of venireperson 25.

As did the Waco Court of Appeals in *Torres*, we must "accord[] great deference to the trial court's denial of appellant's *Batson* challenge" and "cannot say that, based on our review of the record, the trial court's ruling [wa]s clearly erroneous." *Id.* (citing *Snyder*, 552 U.S. at 477). Accordingly, we overrule Auston's first point of error.

## II. There Was No Jury-Charge Error

In his last point of error, Auston raises jury-charge error. "In reviewing a jury-charge issue, an appellate court's first duty is to determine whether the charge contains error." *Briceno*

*v. State*, 675 S.W.3d 87, 92 (Tex. App.—Waco 2023, no pet.) (citing *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)).  Here, we find no such error.

The State's indictment alleged that Auston intentionally, knowingly, or recklessly caused bodily injury to a peace officer by the following manner and means:  "by striking [the officer] with his hand or foot, grabbing him with his hand or arm, or causing him to strike the ground or other hard object."  As a result, the trial court incorporated the alleged manner and means in the following charge to the jury:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that in Brazos County, Texas, on or about March 4, 2019, the defendant, LAWRENCE AUSTON, did then and there intentionally, knowingly, or recklessly cause bodily injury to C. Johnson, hereafter styled the complainant, by striking him with his hand or foot, grabbing him with his hand or arm, or causing him to strike the ground or other hard object, and the defendant knew that the complainant was a peace officer and was lawfully discharging an official duty, namely attempting to arrest the defendant, then you will find the defendant guilty of Assault of a Peace Officer as charged in the indictment.

Auston's argument takes aim at the language accusing him of striking Johnson with his hand or foot.  He argues that there was a material variance between the indictment and evidence at trial because, according to Auston, the evidence did not show that he struck Johnson with his hand or foot.  As a result, he complains that the trial court erred by submitting that manner and means for the jury's consideration.  Accordingly, the determination of whether jury-charge error occurred rests on the state of the evidence.

At trial, Johnson testified that he stopped Auston for a traffic violation but smelled phencyclidine, commonly known as PCP, as he stood by the driver's side door.  According to Johnson, Auston appeared to be intoxicated and could not produce a driver's license.  When

7

Johnson attempted to place Auston in handcuffs, a lengthy struggle ensued. Johnson testified that Auston placed his arm around Johnson's hand and tried to choke him, hooked Johnson's leg, picked Johnson up and slammed him on the ground, and drug him across the pavement. Johnson also said that Auston "actually tried to kick" him. When asked if Auston was continuing to hit him during the fight, Johnson testified, "I honestly don't know if -- just in that moment of all of the things going on, I do not know if he struck me." Even so, when asked if Auston "repeatedly kick[ed], punch[ed], grab[bed], and drag[ged]" him, Johnson said, "Yes."

At the charge conference, when Auston objected to the submission of the phrase by "striking him with his hand or foot," the State responded that recorded footage showed that Auston had struck Johnson with his hand and foot. The trial court agreed and, as a result, overruled Auston's objection to the jury charge.

We see no error in the trial court's ruling. In addition to Johnson's testimony that he was repeatedly kicked and punched, our review of the recording admitted at trial shows that, while Johnson attempted to arrest Auston, Auston used his hand and foot to strike Johnson. As a result, there was no variance between the indictment and proof at trial because the recording itself enabled the jury to conclude that the State met its burden to prove the challenged manner and means.

Because we find no jury-charge error, we overrule Auston's last point of error.[3]

---

[3]Moreover, "[t]o obtain a reversal for jury-charge error, [Auston] must have suffered actual harm and not merely theoretical harm." *Briceno*, 675 S.W.3d at 92 (citing *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012)). In light of the discussion about immaterial variances in *Johnson v. State*, 364 S.W.3d 292, 297–98 (Tex. Crim. App. 2012), we conclude that Auston would be unable to show harm from any alleged jury-charge error.

## III.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:    January 24, 2024
Date Decided:      February 7, 2024

Do Not Publish