# NO. 12-17-00157-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ALONSO DONELL IRVING,* *APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HOUSTON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Alonso Donell Irving appeals his conviction for aggravated robbery.  In two issues, Appellant argues that the trial court erred when it denied his *Batson* challenge during voir dire and admitted certain evidence during trial.  We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated robbery.  He pleaded "not guilty" and the matter proceeded to a jury trial.  During voir dire, the State sought to exercise a peremptory strike against Venire Member Number 21, who is African American.  Appellant objected to this strike pursuant to *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986).[1]  The State responded that it exercised its strike against this venire member because of his concern over convicting an innocent person and he knew someone who had been the victim of a robbery.  The trial court overruled Appellant's *Batson* challenge.

During trial, the State introduced evidence of a black duffel bag and its contents.  Among the contents was DNA from a codefendant.  Appellant objected to introduction of the DNA evidence arguing that it was irrelevant.  The trial court overruled his objections.  The jury

---

[1] *See also* TEX. CODE CRIM. PROC. ANN. art. 35.26 (West 2006).

ultimately found Appellant "guilty" as charged in the indictment and sentenced him to confinement for forty-five years. This appeal followed.

## BATSON CHALLENGE

In his first issue, Appellant argues that the trial court erred in denying his *Batson* challenge because the State improperly exercised a preemptory strike against an African American venire member.

**Standard of Review and Governing Law**

The use of a peremptory challenge to strike a potential juror because of race violates the equal protection guarantee of the United States Constitution and Article 35.261 of the Texas Code of Criminal Procedure. *See Batson*, 476 U.S. at 86, 106 S. Ct. at 1717; *see also* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). In the face of perceived purposeful discrimination, a party may request a *Batson* hearing. *See id.*

*Batson* provides a three step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476–77, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008); *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). The opponent of a peremptory challenge first must make a prima facie case that the peremptory challenge was exercised on the basis of race. *Snyder*, 552 U.S. at 476, 128 S. Ct. at 1207; *Watkins*, 245 S.W.3d at 447. If that showing has been made, the burden of production shifts to the proponent of the strike to offer a race-neutral basis for striking the juror in question. *Snyder*, 552 U.S. at 476–77, 128 S. Ct. at 1207; *Watkins*, 245 S.W.3d at 447. The issue in step two is the facial validity of the prosecutor's explanation, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995); *see also Williams v. State*, 301 S.W.3d 675, 689 (Tex. Crim. App. 2009). In the third and final step, the trial court must determine whether the opponent of the strike has carried his burden to prove purposeful discrimination. *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207; *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). Throughout the challenge, the burden of persuasion remains with the defendant, who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge. *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.–Houston [1st Dist.] 2008, pet. denied).

When the State offers a race neutral explanation for the strikes, the defendant must prove that the prosecutor's reasons were merely a sham or pretext. *Watkins*, 245 S.W.3d at 447. "The ultimate plausibility of that race-neutral explanation is to be considered as part of the third step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination." *Id.* Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race neutral explanation for his strike is pretextual, not genuine, is a question of fact for the trial court to resolve in the first instance. *Id.*

## Analysis

At the conclusion of voir dire, Appellant raised a *Batson* challenge to the State's peremptory strikes of three venire members. On appeal, Appellant challenges only the strike of Venire Member Number 21.

During the State's voir dire, Venire Member Number 21 acknowledged his fear of wrongfully convicting someone. During Appellant's voir dire, Venire Member Number 21 stated that finding an innocent person guilty is worse than letting a guilty person go free. He also stated that he knew a woman who had been robbed. The State subsequently sought to strike Venire Member Number 21, to which Appellant raised a *Batson* challenge. The State responded as follows:

> He was the one that was very afraid that he would convict an innocent person, and he also responded if -- to the question if he's ever been robbed, that he knew a lady that got robbed. I thought that was a little odd.

Appellant argued that this was not a race neutral reason for striking Venire Member Number 21, but the trial court disagreed and allowed the State to strike the potential juror.

### Prima Facie Showing

Appellant objected to the State's peremptory strike of Venire Member Number 21, who is African American, and who Appellant asserted was one of three African American panel members in the strike zone. Without expressly finding that Appellant made a prima facie case that the strike was race based, the trial court asked the State to respond. Whether Appellant satisfied his initial burden of showing a prima facie case that the State's peremptory challenge

3

was racially based is moot because we conclude, as discussed below, that the State offered a race-neutral explanation for its strike of Venire Member Number 21. *See Snyder*, 552 U.S. at 476, 128 S. Ct. at 1207; *see also Watkins*, 245 S.W.3d at 447. For this reason, we need not determine whether Appellant made a prima facie case of racial discrimination. *See Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) ("If, as here, the State offers a race-neutral explanation before any inquiry on the prima facie case, the issue of a prima facie case is moot."); *see also Finley v. State*, 529 S.W.3d 198, 206 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("we need not determine whether appellant made a prima facie case of racial discrimination because the State offered a race-neutral explanation for its strike of venire member four, thereby mooting the issue of appellant's prima facie case[]").

### Race-Neutral Explanation

As previously stated, when asked to respond to Appellant's *Batson* challenge, the State asserted that it struck Venire Member Number 21 because "[h]e was the one that was very afraid that he would convict an innocent person, and he also responded if – to the question if he's ever been robbed, that he knew a lady that got robbed. I thought that was a little odd." The State's explanation is facially valid. *See Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771 (race-neutral reason "does not demand an explanation that is persuasive, or even plausible[;]" the issue is the facial validity of the explanation). Nor is any discriminatory intent inherent in the State's explanation of its reasoning for the peremptory strike in question. *See id.*; *see also Williams*, 301 S.W.3d at 689. Absent an inherent discriminatory intent, we deem the reason offered race-neutral. *See Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771; *see also Williams*, 301 S.W.3d at 689. This satisfies the State's burden of production. *See Watkins*, 245 S.W.3d at 451; *see also Finley*, 529 S.W.3d at 206.

### No Evidence of Pretext

Once the State offered a race neutral reason for striking Venire Member Number 21, the burden shifted to Appellant to prove the State's proffered explanation was a mere pretext for purposeful discrimination. *Blackman v. State*, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013). At this step, "[t]he trial court has a pivotal role in evaluating *Batson* claims," because the trial court must evaluate the prosecutor's credibility and "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." *Snyder*, 552 U.S. at 477, 128 S. Ct. 1203 (internal quotation omitted); *see also Blackman v. State*, 394 S.W.3d 264, 271 (Tex.

4

App.—Houston [1st Dist.] 2012) (Keyes, J., dissenting), *rev'd*, **Blackman**, 414 S.W.3d at 771. "An appellate court misapplies the 'clearly erroneous' standard of appellate review when it substitutes its judgment for that of the trial court in deciding that the prosecutor's facially race-neutral explanation for striking a venire member was a pretext." **Blackman**, 394 S.W.3d at 272 (Keyes, J., dissenting) (citing **Gibson v. State**, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004)).

We turn to the voir dire record to assess whether the trial court's ruling was clearly erroneous. *See* **Nieto v. State**, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012); **Ebong v. State**, NO. 14-14-00070-CR, 2015 WL 1632713, at *4 (Tex. App.—Houston [14th Dist.] July 22, 2015, pet. ref'd, untimely filed) (mem. op., not designated for publication). The record demonstrates that, at voir dire, the following exchange occurred between the State and Venire Member Number 21 during the State's questions regarding the burden of proof in a criminal trial:

> [State]: Anybody afraid that they will wrongfully convict somebody? Does that worry any of you? Number 21, Mr. David. Is that your last name?
> [Venire Member Number 21]: Yes.
> [State]: Mr. David, tell me how you feel about that.
> [Venire Member Number 21]: Well, what was the question again?
> [State]: Are you afraid that you might wrongfully convict somebody?
> [Venire Member Number 21]: Absolutely. It's very important to me.

Additionally, during Appellant's voir dire examination, the following exchanges occurred:

> [Appellant's Counsel]: Now, each one of those elements has to be proven beyond a reasonable doubt. I think [the State] went over that with you guys; is that correct? So, that means, that if one element is not proven beyond a reasonable doubt, juror number 21, what would you[r] verdict have to be?
> [Venire Member Number 21]: Innocent.
> [Appellant's Counsel]: Have to be not guilty, right.
> [Venire Member Number 21]: Uh-huh.
> [Appellant's Counsel]: Now, do you have to find him beyond a reasonable doubt for each element, or only one element?
> [Venire Member Number 21]: Each.

5

...

[Appellant's Counsel]:  All right.  Last but not least, quick poll and I will have my seat, juror number 1, I'm going to go one by one, what's worse, letting a guilty person go free, or finding an innocent person guilty?

. . .

[Venire Member Number 16]:  Finding an innocent person guilty.

. . .

[Venire Member Number 21]:  Same.

. . .

[Appellant's Counsel]:  Anyone know anyone that's been robbed or been, I guess, had violence used against them?  Not you personally, but somebody maybe you know, anyone?

 . . .

[Venire Member Number 21]:  I know a lady got robbed, we worked at the same store.  I wasn't there but I know her.

Our review of the record indicates support for the State's explanation for striking Venire Member Number 21.  At trial, after the State offered its explanation, Appellant's counsel merely stated his belief that the State's reason for striking Venire Member Number 21 was not race neutral.  On appeal, Appellant argues that the State lacks a race-neutral reason because the statements made by Venire Member Number 21 are normal and not out of the ordinary and do not "make sense."  However, "[p]roving purposeful discrimination by a preponderance of the evidence requires more than merely stating disagreement with, or correctly identifying factual error in, the prosecutor's explanations." *Finley*, 529 S.W.3d at 210.

Appellant does not direct us to any evidence in the record tending to show a racially motivated animus.  *See id*.  The record does not indicate that Appellant presented evidence to disprove or impeach the State's explanation or sought to cross-examine the prosecutor regarding the proffered explanation. *See id.* at 207.  Courts have held that a number of factors, if present, tend to show purposeful discrimination, including: (1) the reason given for the peremptory challenge is unrelated to the facts of the case; (2) there was a lack of questioning to the challenged juror or a lack of meaningful questions; (3) disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck; (4) disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response

6

without asking the same question of other panel members; and (5) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically. *Whitsey v. State*, 796 S.W.2d 707, 713-14 (Tex. Crim. App. 1989) (setting forth "nonexclusive list of factors which weigh against the legitimacy of a race-neutral explanation"); *see Miller-El v. Dretke*, 545 U.S. 231, 240-63, 125 S. Ct. 2317, 2325-38, 162 L. Ed. 2d 196 (2005) (considering the combined impact of a number of factors in concluding that prosecutors struck prospective jurors on racially discriminatory basis.

Appellant does not identify any such factors here. For example, he does not contend that the State engaged in disparate treatment or questioning of Venire Member Number 21, which would require this Court to engage in a comparative analysis of the State's strikes. *See Finley*, 529 S.W.3d at 210; *see also Miller-El*, 545 U.S. at 240-52, 255-63, 125 S. Ct. 2317, 2333-38. Even if Appellant made such an argument, he presented no record of the venire panel's racial makeup, thus precluding any comparative analysis of the State's strikes of minority and non-minority venire members. *See Whitsey*, 796 S.W.2d at 713-14; *see also Finley*, 529 S.W.3d at 210. Additionally, Appellant makes no attempt to establish the remaining factors and the record does not show (1) that the State's reason is unrelated to the facts of the case; (2) that there was a lack of questioning to Venire Member Number 21 or a lack of meaningful questions; or (3) an explanation based on a group bias. *See Whitsey*, 796 S.W.2d at 713-14

The trial court was in the best position to evaluate the prosecutor's demeanor, and we will not substitute our judgment for that of the trial court. *See Blackman*, 394 S.W.3d at 272 (Keyes, J., dissenting); *see also Ebong*, 2015 WL 1632713, at \*4 (a finding regarding intentional discrimination largely turns on the trial court's evaluation of the prosecutor's demeanor and credibility). We defer to the trial court's ruling in the absence of exceptional circumstances. *Nieto*, 365 S.W.3d at 676. Accordingly, viewing the record in the light most favorable to the trial court's ruling, we conclude that the trial court's denial of Appellant's *Batson* challenge was not clearly erroneous. *See id.*; *see also Finley*, 529 S.W.3d at 211. Appellant's first issue is overruled.

## ADMISSION OF EVIDENCE

In his second issue, Appellant contends the trial court erred when it admitted evidence of his codefendant's DNA being found on the duffel bag. Specifically, he contends the evidence was more prejudicial than probative under Texas Rule of Evidence 403.

In general, a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion, and (2) the trial court either ruled on the request, objection, or motion, or refused to rule, and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). An objection should be made as soon as the ground for objection becomes apparent. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995).

In this case, the record reflects that Appellant did not object to the DNA evidence based on Rule 403. Each time the evidence was offered by the State, Appellant objected on the basis of relevance under Texas Rule of Evidence 401. Accordingly, we do not address the merits of this challenge because Appellant failed to preserve his Rule 403 complaint for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Sony v. State*, 307 S.W.3d 348, 355-56 (Tex. App.—San Antonio 2009, no pet.); *Longoria v. State*, No. 12-15-00251-CR, 2016 WL 7488861, at *5 (Tex. App.—Tyler Dec. 30, 2016, no pet.) (mem. op., not designated for publication) (declining to address merits of Rule 403 challenge because no Rule 403 objection was raised at trial). Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered December 13, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 13, 2017**

**NO. 12-17-00157-CR**

**ALONSO DONELL IRVING,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Houston County, Texas (Tr.Ct.No. 16CR-043)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*