# NO. 12-22-00032-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REGINALD WAYNE BIGGS,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Reginald Biggs appeals his conviction for unlawful possession of a firearm by a felon. In two issues, he contends the trial court erroneously denied his ***Batson*** challenge during voir dire and the judgment contains an error. We modify and affirm as modified.

## BACKGROUND

Appellant was charged by indictment with unlawful possession of a firearm by a felon. The indictment further alleged Appellant was a habitual offender with two prior felony convictions. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

After voir dire, Appellant objected to the trial court seating the jury on grounds that the State exercised preemptory strikes against three African American venire members based upon their race. After a hearing, the trial court overruled Appellant's objections and the jury was sworn and impaneled.

Following trial, the jury found Appellant "guilty" and sentenced him to sixty years imprisonment. This appeal followed.

In his first issue, Appellant argues the trial court erred in denying his ***Batson*** challenge because the State improperly exercised peremptory strikes against African American venire members.

## Standard of Review and Applicable Law

The Equal Protection Clause of the United States Constitution and Article 35.261 of the code of criminal procedure prohibit the use of a preemptory challenge to strike a potential juror based upon the juror's race.  U.S. CONST. AMEND. XIV; *see **Batson v. Kentucky***, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006).  If a party perceives the other has exercised a preemptory challenge based on purposeful racial discrimination, that party may request what is colloquially termed a "***Batson***" hearing.  *See* TEX. CODE CRIM. PROC. ANN. art. 35.261.

A three-step process is used to analyze ***Batson*** claims: (1) the opponent of the peremptory challenge must present a prima facie case of racial discrimination, (2) if he does so, the burden shifts to the proponent of the peremptory challenge to present a race-neutral reason for the challenge, and (3) if that proponent satisfies this burden, the trial court must then determine whether the opponent has proven purposeful racial discrimination.  ***Colone v. State***, 573 S.W.3d 249, 263 (Tex. Crim. App. 2019); ***Irving v. State***, No. 12-17-00157-CR, 2017 WL 6350097, at *1 (Tex. App.—Tyler Dec. 13, 2017, pet. ref'd) (mem. op., not designated for publication).

A trial court's ruling on a ***Batson*** challenge must be upheld unless it is clearly erroneous. ***Nieto v. State***, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012).  To hold that a decision was clearly erroneous, we must be left with a definite and firm conviction that a mistake has been committed.  ***Goldberg v. State***, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).  The clearly erroneous standard is highly deferential because the trial court is in the best position to determine whether the State's facially race neutral explanation for a peremptory strike is genuinely race neutral.  ***Gibson v. State***, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We focus on the genuineness rather than on the reasonableness of the State's asserted race neutral reason.  ***Id.*** at 533–34.

In evaluating the genuineness of the State's proffered race neutral reason, we consider whether (1) the reason is related to the facts of the case, (2) the State meaningfully questioned

the challenged venire member, (3) persons with the same or similar characteristics as the challenged venire member were not struck, (4) there was disparate examination of the venire members, and (5) an explanation was based upon a group bias although the trait is not shown to apply to the challenged venire member. *Williams v. State*, 804 S.W.2d 95, 105–06 (Tex. Crim. App. 1991). We consider the entire voir dire record and need not limit our review to the specific arguments propounded in the trial court. *Nieto*, 365 S.W.3d at 676. However, we may not substitute our judgment for the trial court's in deciding that the proponent's explanation was a pretext. *Id.*

## Prima Facie Showing

At the conclusion of voir dire, Appellant raised a *Batson* challenge to the State's preemptory challenges to venire members 25, 47, and 66. The record reflects that Appellant, as well as the three venire members, are African American. The trial court asked the State to respond. The State did not contest that Appellant made a prima facie showing, and offered race neutral reasons for its use of preemptory challenges against venire members 25, 47, and 66.

*Batson* challenges are subject to ordinary rules of procedural default. *See Flores v. State*, 33 S.W.3d 907, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). When, as here, the State offers explanations for exercising preemptory challenges on the contested venire members, and the trial judge rules on the ultimate question of discrimination, the issue of whether the defendant made a prima facie case is moot and not subject to appellate review. *Id.*; *see also Colone*, 573 S.W.3d at 263 (State's allegation that it had race-neutral reasons for preemptory challenges renders step one of *Batson* analysis moot). Thus, we will proceed to step two.

## Race Neutral Reasons

With respect to its exercise of a preemptory challenge against venire member 25, the State offered the following explanation:

> [T]he main thing would be obviously looking at her, it would be she'd been employed for five months, which I tend to like people that have got longer term of employment. I also specifically – I do remember this, and I remember, frankly, her demeanor when I asked about law enforcement. I know she did not raise her card, but I clearly remember get a very – I'll say this – very – a look from her that I did not – I did not feel comfortable with.

Regarding its exercise of a preemptory challenge against venire member 66, the State explained as follows:

> I have occupation being food services. In particular, we're back, again to two months. Only been working for two months. The other issue is looking at her—the spouse's employer is Carter Temple Church. Good chance that her husband might be a pastor of some sort. I tend to—in my experience, people that are pastors and churches can often be more sympathetic. And this being a case that we're dealing with a—up to a life sentence, that gave me concern as well.

And with respect to its exercise of a preemptory challenge against venire member 47, the State offered the following explanation:

> I do remember the main thing on her was just her overall demeanor was very dismissive. Didn't really seem to be paying much attention at all . . . In addition to this, it appears that she has no children. As a general rule, combined with those other reasons, I like it when we have people that have children to the State's side. That tends to make them oftentimes more conservative and much more protective. And with being somebody who's protective of children they tend to potentially give more lengthier sentences just due to the fact of protecting the community. So those are the reasons for 47. And not that I have to prove this, just thinking off the top of my head, I clearly remember there were several people: 21, 59, I believe, and then also 47 that I clearly made a note I did not like their—they just seemed to be completely dismissive and distracted, Judge.

In step two of the *Batson* analysis, the proponent of the preemptory challenge need only offer an explanation that is racially neutral on its face. *Colone*, 573 S.W.3d at 263. No discriminatory intent is inherent in the prosecutor's explanations. *See id.*, *Gibson v. State*, No. 12-18-00314-CR, 2019 WL 7373840, at *2 (Tex. App.—Tyler Dec. 31, 2019, no pet.) (mem. op.). We therefore conclude that the State satisfied its burden of production by offering a facially race neutral reason for its preemptory challenges to venire members 25, 47, and 66. *See Gibson*, 2019 WL 7373840 at *2; *Tennyson v. State*, No. 12-16-00225-CR. 2018 WL 1180750, at *3 (Tex. App.—Tyler Mar. 7, 2018, pet. ref'd) (mem. op., not designated for publication).

## Genuineness of Explanations

After the State's burden of producing race neutral explanations was satisfied, the burden shifted to Appellant to prove that the proffered explanations were mere pretext for purposeful discrimination. *See Blackman v. State*, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013). At this step, "[t]he trial court has a pivotal role in evaluating *Batson* claims," because the trial court must evaluate the prosecutor's credibility, and "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008) (internal quotation omitted); *see also Blackman v. State*, 394 S.W.3d 264, 271 (Tex. App.–Houston [1st Dist.] 2012) (Keyes, J.,

dissenting), *rev'd*, **Blackman**, 414 S.W.3d at 771. "An appellate court misapplies the 'clearly erroneous' standard of appellate review when it substitutes its judgment for that of the trial court in deciding that the prosecutor's facially race-neutral explanation for striking a venire member was a pretext." **Blackman**, 394 S.W.3d at 272 (Keyes, J., dissenting) (citing **Gibson**, 144 S.W.3d at 534).

On appeal, Appellant argues that the State did not apply its race neutral reasons in a nondiscriminatory manner. Specifically, regarding the State's reasoning regarding the length of employment for venire members 25 and 66, Appellant points out that venire members 26 and 42 had shorter employment histories. According to the juror cards, venire member 26 had been employed for one day and venire member 42 was unemployed. Both venire members 26 and 42 were white. Appellant urges that the State's asserted reason for striking venire member 47 is disingenuous. When originally confronted about striking venire member 47, the State claimed it could not remember whether she was black. Her juror information card stated "other," so the trial court asked the State whether it agreed with Appellant that venire member 47 was "a black, African American." The State responded, "Judge, I—I honestly couldn't—couldn't say. I—I honestly don't remember. I—I don't. I remember why I didn't like her. But I don't—you know, I try not to keep track of all that. I just don't—I don't remember."[1] Appellant contends that if "her demeanor [had] been as dismissive and inattentive as the State argued, then surely the prosecutor would have remembered she was African American." Appellant also urges that the State failed to strike venire member 35, who was also childless and was white.

We turn to the voir dire record to assess whether the trial court's ruling was clearly erroneous. **Nieto**, 365 S.W.3d at 676. In doing so, we first note that none of the venire members at issue were questioned individually during the voir dire process. The prosecutor stated that venire member 25 was struck because she had a short term of employment and she gave him "a look" when asked about law enforcement. Venire member 25's juror card confirms that she is African American and had been employed for five months at the time of trial. The prosecutor claimed venire member 47 was struck because of her generally dismissive behavior and lack of children. The prosecutor explained that he prefers jurors with children because, in his experience, a parent's protective nature leans toward giving longer punishment sentences.

_____

[1] The record reflects that the bailiff went into the central jury room to personally observe whether venire member 47 was an African American. When the bailiff returned, he confirmed that venire member 47 appeared to be "a black female."

Venire member 47's juror card lists her race as "other." Only after the bailiff personally observed the color of venire member 47's skin did the parties agree she was black. The juror card confirms venire member 47 has no children. Regarding venire member 66, the prosecutor stated that she was struck because of her short employment term and her husband's employment at a church. The prosecutor explained that he believes people involved in church can be more sympathetic and tend to give less harsh sentences. The juror card confirms that venire member 66 is employed in food service, had been employed for two months at the time of trial, and her husband is employed at a church.

A prospective juror's nonverbal reactions and body language can be race neutral reasons for exercising a peremptory strike. *See Nieto,* 365 S.W.3d at 680. Employment status can also be a racially neutral reason for exercising strikes. *See Middleton v. State,* 187 S.W.3d 134, 142 (Tex. App.–Texarkana 2006, no pet.) (panel member's employment is race neutral explanation, if prosecutor has had poor success with that type worker); *Kennedy v. State*, No. 12-14-00219-CR, 2015 WL 3609096, at *3 (Tex. App.—Tyler June 10, 2015, no pet.) (mem. op., not designated for publication). A prosecutor's reason for striking a juror based on her demeanor is established when the statement is made on the record, undisputed by opposing counsel, and unquestioned by the trial judge. *Yarborough v. State,* 947 S.W.2d 892, 895 (Tex. Crim. App. 1997). Appellant did not challenge the State's assertions regarding venire members 25's and 47's demeanor. While Appellant challenges the authenticity of the State's strike of venire member 47, the prosecutor's genuineness is a question of credibility.

While a lack of meaningful questioning is a factor to consider in determining whether the trial court's ruling was clearly erroneous, it is not determinative. *See Johnson v. State*, 959 S.W.2d 284, 290–91 (Tex. App.–Dallas 1997, pet. ref'd). The trial court judge was able to personally observe the proceedings. Therefore, we defer to the trial court's assessment of the prosecutor's credibility in explaining his reasoning. *Kennedy*, 2015 WL 3609096, at *4. In denying Appellant's *Batson* challenge, the trial court stated:

> All right. Well, I used to talk more about Batson motions because I really thought they were pretty important -- still think they're very important. But I have learned that really the Courts just want – "the Courts" being the appellate courts -- want the trial court to just rule and not give its narration.
>
> So the Court finds that the three questioned ones -- 25, 47, and 66 -- do appear to be black, African American individuals, which would trigger the appropriateness of a Batson motion whenever

they've been struck by the State. There's no doubt that the State did exercise preemptory strikes against those individuals.

However, the State has offered what I believe the law calls race-neutral reasons. And I think employment is a legitimate issue for both sides to look at. I think their demeanor, distraction, not paying attention -- each lawyer gets to make their own assessments.

Of course, the law says that because of the importance of a fair cross-section of the community, neither side can strike people solely for their race. I don't find that's happened here.

And historically, I would point out, too, that I don't -- I don't know that I've ever seen it in my courtroom and I'm not aware that any -- any defense lawyer has established that I'm aware of, in Smith County, prosecutors have indiscriminately used race reasons to exclude people from our juries, much unlike I'm sure everyone's familiar with the Dallas County and the way they used to do things over there.

So I do deny the Batson motion, and I'll let you file the official motion with the clerk so it will be in the Court's file. But I think I've identified it adequately for the appellate court.

Based on its comments, the trial court clearly found the prosecutor's statements to be credible.

We first acknowledge Appellant correctly points out that the prosecutor's reason for striking the three African American venire members at issue conflicts with the failure to exercise peremptory challenges as to similarly situated whitevenire members. As to employment, venire members 26 and 42 (both white) have shorter employment than the struck African American venire members 25 and 66. Though a stated reason for striking venire member 47 was that she had no children, venire member 35, who was white, was not struck. Further, the prosecutor's representation that he could not remember venire member 47's race though he described her overall demeanor as very dismissive, has questionable credibility. However, determination of crebibilty is not our role.

The trial court exercises a crucial role in evaluating *Batson* claims, because the trial court must evaluate the prosecutor's credibility, and the best evidence of discriminatory intent is often found in the demeanor of the attorney exercising the preemptory challenge. *Williams*, 804 S.W.2d at 105-06.; *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208, 170 L. Ed. 2d 175. We cannot minimize the importance of the court's presence at trial. *Tave v. State*, 899 S.W.2d 1, 4 (Tex. App.—Tyler 1994, pet. ref'd). The court was present at voir dire and the *Batson* hearing to hear the explanations offered by the State and observe the demeanor of the potential jurors. *Id.* The prosecutor gave race neutral explanations for its preemptory challenges, and Appellant failed to counter the prosecutor's testimony with evidence demonstrating that the State's explanations were a pretext in an attempt to discriminate. *Id.* Further, the explanation for striking venire

members 25 and 47 based on perceived demeanor was established when the explanation was not disputed by Appellant or the trial court. And even if the striking of venire member 66 was questionable based on length of employment, the explanation that her spouse was possibly a minister and, therefore, would potentially oppose a long prison sentence, is plausible and uncontested. Therefore, we cannot say, based upon the record before us, that the trial court's rulings on Appellant's *Batson* challenges were clearly erroneous. *See Goldberg*, 95 S.W.3d at 385. Thus, we overrule Appellant's first issue.

## ERROR IN JUDGMENT

In his second issue, Appellant contends the trial court's judgment should be modified to reflect the correct date that sentence was imposed. The State concedes the error.

The trial court's judgment lists the date sentence was imposed as "N/A." However, the record reflects that Appellant was sentenced on February 8, 2022. We have the authority to modify an incorrect judgment to make the record "speak the truth" when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Ingram v. State*, 261 S.W.3d 749, 754 (Tex. App.—Tyler 2008, no pet.). Therefore, we modify the trial court's judgment to reflect February 8, 2022, as the date sentence was imposed. We sustain Appellant's second issue.

## DISPOSITION

Because we sustain Appellant's second issue and overrule his first issue, we *modify* the trial court's judgment to reflect February 8, 2022, as the date sentence was imposed. We *affirm* the judgment *as modified*.

GREG NEELEY
Justice

Opinion delivered February 28, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2023**

**NO. 12-22-00032-CR**

**REGINALD WAYNE BIGGS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0311-20)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** to reflect February 8, 2022, as the date sentence imposed; in all other respects the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*